**Jan GUIDER and Hope Fair Housing Center, Plaintiffs,**

v.

**Steven BAUER, Judy Bauer, Sun Publications, Inc., d/b/a The Naperville Sun, Defendants.**

**No. 93 C 939.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 4, 1994.

Derrick Maurice Ford, Chicago Lawyers' Committee for Civil Rights, Michael W. Duffee, Matkov, Salzman, Madoff & Gunn, Colette M. Foissotte, Katten, Muchin & Zavis, Chicago, IL, for plaintiffs.

Donald S. Rothschild, Mark C. Gross, Goldstine, Skrodzki, Russian, Nemec & Hoff, Ltd., Summit, IL, for Steven Bauer, Judy Bauer.

Stephen M. Cooper, Peter M. Storm, Cooper & Storm, Geneva, IL, for Sun Publications Inc.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Plaintiffs, Jan Guider (Guider) and Hope Fair Housing Center (Hope), allege that defendants, Steven Bauer and Judy Bauer (jointly referred to as the Bauers) and Sun Publications, Inc., d/b/a *The Naperville Sun* (*The Sun*), engaged in unlawful discrimination against Guider on the basis of familial status. Plaintiffs brought this action under the Fair Housing Act of 1968 as amended (the Act), 42 U.S.C. § 3601 *et seq.*, seeking declaratory judgment, permanent injunctive relief and damages. Plaintiffs allege the Bauers violated section 3604(a) of the Act by refusing to rent an apartment to Guider because she has children. Plaintiffs also claim the defendant newspaper violated section

3604(c) of the Act by publishing a discriminatory real estate advertisement which indicates a preference for tenants based on familial status. The Bauers have moved for summary judgment on the basis that they are exempt from liability under section 3603(b)(2) of the Act. *The Sun* has also moved for summary judgment based on various First Amendment arguments.

On April 26, 1991 the Bauers placed an advertisement in *The Sun* to rent an apartment in Naperville. The advertisement stated in part:

> NAPERVILLE: Perfect for single or couple. 2 Bedroom Victorian Duplex, 2-story, smoke-free, washer/dryer.

After reading the advertisement in the classified section, Guider called the phone number listed in the advertisement to inquire about the apartment. Judy Bauer answered the phone and confirmed that the two-bedroom duplex advertised in the paper was for rent. Bauer then asked Guider who would be living in the apartment with her. When Guider replied that her two sons would be living with her, Bauer informed her that the apartment was not suitable for children because the rooms were too small and then hung up the phone.

On May 10, 1991, an employee of the Chicago Lawyers' Committee for Civil Rights Under Law called Ms. Bauer to inquire about the same apartment. Ms. Bauer suggested she come by and look at the apartment. When the employee then told Ms. Bauer she had children, Ms. Bauer told her the apartment was rented and hung up the phone.

On April 26, 1991, Guider called *The Sun* and told a supervisor in the classified department that the advertisement was discriminatory and violated the Fair Housing Act. The supervisor subsequently informed her that the advertisement would be removed from the paper. However, the same advertisement ran approximately one week later in the classified section of *The Sun.*

In early April of 1991, the Bauers allegedly entered into an agreement to sell their home to their daughter, Anne Bauer. On May 31, 1991, a written residential sales contract was executed between the parties and the sale was closed on July 31, 1991. The Bauers claim their daughter Anne asked them to act as her agent to locate and secure a tenant for the west unit of the home. The Bauers leased the west apartment to a new tenant on approximately June 21, 1991.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). Rule 56 further provides that a party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

I. *The Bauers' Motion for Summary Judgment*

The Bauers contend they are entitled to summary judgment because they are exempt from liability under section 3603(b)(2) of the Fair Housing Act. Section 3603(b)(2) provides that:

> (b) Nothing in section 3604 of this title (other than subsection (c)) shall apply to—
>
> .    .    .    .    .
>
> (2) rooms or units in dwellings containing living quarters occupied or intended to be occupied by no more than four families living independently of each other, if the owner actually maintains and occupies one of such living quarters as his residence.

42 U.S.C. § 3603(b)(2). Section 3604 of the Act states in relevant part:

> ... it shall be unlawful—
>
> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> .    .    .    .    .

(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. §§ 3604(a) and (c).

The statutory exemption applies to dwellings occupied by no more than four families, as long as the owner resides in one of the four units. There is no disagreement between the parties that "no more than four families living independently of each other" occupied the dwelling in question and that Anne Bauer "maintains and occupies one of [the] living quarters." Whether the Bauers owned the property in question at the time the allegedly discriminatory acts occurred is disputed. The Bauers claim they were not the "owners" of the property and are therefore exempt from the Act as their daughter Anne was in the process of purchasing the property at the time of the alleged discriminatory acts.

■■■ The Supreme Court has stated that the Fair Housing Act is subject to "generous construction" in order to effect the purpose of the Act, which is to provide for fair housing throughout the United States. 42 U.S.C. § 3601; *Trafficante v. Metropolitan Life Ins.*, 409 U.S. 205, 212, 93 S.Ct. 364, 368, 34 L.Ed.2d 415 (1972); *Stackhouse v. DeSitter*, 620 F.Supp. 208, 210 (N.D.Ill.1985); *Metropolitan Dev. Corp. v. Village of Arlington Heights*, 469 F.Supp. 836, 845 (N.D.Ill.1979), aff'd, 616 F.2d 1006 (7th Cir.1980). All exemptions to the Fair Housing Act should be construed narrowly. *United States v. Columbus Country Club*, 915 F.2d 877, 883 (3rd Cir.1990), cert. denied, 501 U.S. 1205, 111 S.Ct. 2797, 115 L.Ed.2d 971 (1991); *United States v. Hughes Memorial Home*, 396 F.Supp. 544, 550 (W.D.Va.1975). General principles of statutory construction further provide that those who claim the benefit of an exception to a statutory prohibition have the burden of proving that their claim comes within the exception. *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 188 n. 20, 105 S.Ct.

638, 657 n. 20, 83 L.Ed.2d 556 (1985); *United States v. First City National Bank*, 386 U.S. 361, 366, 87 S.Ct. 1088, 1092, 18 L.Ed.2d 151 (1967).

■■ The Bauers effectively admit in both their initial memorandum and reply brief that their daughter did not own the two-unit home at the time Judy Bauer allegedly refused to rent one of the units to Jan Guider due to her familial status. Defendants' memorandum in support of their motion for summary judgment states: *"At all times relevant to these proceedings,* Anne Bauer was *in the process of purchasing the building* from her parents." (Memorandum at 1) (emphasis added). The reply brief states:

> The written Residential Sales Contract entered into between the BAUERS and their daughter Anne dated May 31, 1991 offers no opportunity to the BAUERS to cancel the transaction.... Thus, for all intents and purposes, Anne Bauer was the owner of the property, and the date upon which a Deed was actually conveyed to her [July 15, 1991] was determined by purely administrative circumstances.

"For all intents and purposes" is the closest defendants come to stating that Anne Bauer was the owner of the property in question. Defendants implicitly acknowledge that Anne Bauer was not the legal owner of the property until July 15, 1991, the date the sale was closed and the warranty deed was conveyed to her.

The Bauers' alleged discriminatory acts, however, occurred in April of 1991. This was more than one month prior to the written residential sales contract the Bauers entered into with their daughter (May 31, 1991) and approximately three months before the sale was closed and legal ownership of the home was transferred to their daughter (July 15, 1991). While defendants make much of the fact that they had concluded the sale to their daughter before they even knew of Guider's allegations of discrimination, that does not change the fact that the Bauers "owned" the property at the time of the allegedly discriminatory acts and that Anne Bauer was merely one of their tenants.

The Bauers ask this court to broadly and generously construe the term "owner" set forth in the exemption. While the Bauers may not have been engaged in a sham sale of their home to avoid the reach of the Fair Housing Act, the broad construction of "owner" advocated by defendants would effectively encourage others to engage in discrimination prohibited by the Act and would not serve the policy reasons behind the Act to provide fair housing throughout the country. Given the rules of statutory construction, a narrow reading of the exemption is appropriate. Because the Bauers have not met their burden of showing that the property in question falls within the statutory exemption set forth in section 3603(b)(2), defendants' motion for summary judgment is denied.

## II. *Sun Publications' Motion for Summary Judgment*

Sun Publications has moved for summary judgment on the basis that a newspaper's decision to accept and publish rental advertisements is an activity protected by the First Amendment. Defendant further contends that the advertisement at issue is facially non-discriminatory and to require the newspaper to investigate possible discriminatory advertisements would turn the newspaper into a regulatory agency.

█ It is well settled that section 3604(c) of the Fair Housing Act does not violate the First Amendment and that publication of advertisements which express a preference in selling or leasing a dwelling based on one of the criteria prohibited by the Act is not protected commercial speech. *Ragin v. New York Times Co.,* 923 F.2d 995 (2d Cir.), cert. denied, — U.S. —, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991); *United States v. Hunter,* 459 F.2d 205, 213 (4th Cir.), cert. denied, 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972). Legislative history also supports the conclusion that publication of discriminatory classified advertisements in newspapers was one of the evils the Act was intended to prevent. Hearings on S. 1358, S. 2114 and S. 2280 before the Subcommittee on Housing and Urban Affairs, Senate Committee on Banking and Currency, 90th Cong. 1st Sess. at 386, 388 (1967).

*Ragin* involved a section 3604(c) action against the New York Times Company for allegedly publishing real estate advertisements which used white and black human models to express racial preferences. In its motion to dismiss, defendant challenged the constitutionality of section 3604(c) and argued that the statute improperly regulated protected commercial speech. The district court denied the motion and the matter was certified for immediate appeal. The Second Circuit affirmed the ruling and held that the government has the power to ban commercial speech related to illegal activity pursuant to *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,* 447 U.S. 557, 563, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980) and *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 388, 93 S.Ct. 2553, 2560, 37 L.Ed.2d 669 (1973). The Court reasoned that advertisements indicating an impermissible preference in housing were not protected commercial speech.

The *Ragin* Court further rejected the argument that section 3604(c) places an undue burden on the newspaper to investigate and police advertisements. The court found this burden no more onerous than that which the newspaper already undertook in reviewing advertisements for other improprieties. 923 F.2d at 1004. In *United States v. Hunter,* 459 F.2d 205 (4th Cir.), cert. denied, 409 U.S. 934, 93 S.Ct. 235, 34 L.Ed.2d 189 (1972), the court also rejected this argument by explaining that a newspaper publisher can readily determine from the face of an advertisement whether it expresses a discriminatory preference. "However the language of the advertisement is couched, the purpose of an advertiser who wishes to publish an advertisement in violation of the Act is to communicate his intent to discriminate and a newspaper publisher can divine this intent as well as any of the readers." *Id.* at 213.

Defendant also argues that the advertisement is not discriminatory on its face. In *Ragin,* which was previously discussed by this court, defendant published real estate advertisements depicting white models as potential buyers or renters while black models were largely portrayed as maintenance em-

ployees and doormen. The few advertisements that exclusively featured black models were for buildings in predominantly black neighborhoods. The court rejected the newspaper's argument that the advertisements were facially nondiscriminatory and held that a trier of fact could conclude that such models expressed a racial preference:

> Congress prohibited all expressions of racial preferences in housing advertisements and did not limit the prohibition to racial messages conveyed through certain means. Neither the text of the statute nor its legislative history suggests that Congress intended to exempt from its proscriptions subtle methods of indicating racial preferences.

923 F.2d at 1000. The Court also refused to limit or "trivialize" the statute by "construing it to outlaw only the most provocative and offensive expressions of racism or statements indicating an outright refusal to sell or rent to persons of a particular race." *Ragin,* 923 F.2d at 999. Similarly, in *Holmgren v. Little Village Community Reporter,* 342 F.Supp. 512 (N.D.Ill.1971), the court found that newspaper advertisements which stated a preference for buyers and tenants who spoke certain languages constituted a preference for persons of certain national origins, or at least an intention to make such a preference. The court found such advertisements to be unlawful despite defendants' arguments that the purpose of the language requirement was to foster communication and understanding between the parties. *Id.* at 513.

▪ Here, the defendant newspaper ran an advertisement which expressed the following preference: "Perfect for single or couple." Contrary to defendant's assertions, the language of the advertisement is not facially nondiscriminatory as a matter of law. The inference that the Bauers would not rent to families with children can be drawn from the clearly expressed preference for a single individual or couple. Methods of indicating prohibited preferences may be subtle as the *Ragin* Court determined. 923 F.2d at 1000. Section 3604(c) is violated if the advertisement suggests to an ordinary reader that a particular familial status is preferred or dis-

preferred for the housing in question. *Ragin* at 999.

In addition, direct evidence appears to exist that the newspaper knew the Bauers intended to discriminate on the basis of familial status. See *Ragin* at 1002. Jan Guider informed the newspaper that Judy Bauer refused to rent the advertised apartment to her because she had children. Guider advised the newspaper that the advertisement was discriminatory and violated the Fair Housing Act. Although the newspaper initially agreed to pull the advertisement, the advertisement ran again one week later. Given the inference which may be drawn from the language of the advertisement and the fact that the newspaper ran the advertisement after it was on notice that the Bauers refused to rent to families with children, genuine issues of material fact exist as to whether the newspaper violated section 3604(c) of the Fair Housing Act. Defendant Sun Publications' motion for summary judgment is denied.

ORDERED: Defendants Steven Bauer, Judy Bauer and the Sun Publications' motions for summary judgment are denied.